

IN THE

UNITED STATES DISTRICT COURT

WESTERN DISTRICT FOR PENNSYLVANIA

MICHAEL SHERRED,
            Petitioner

V.

DONALD KELCHNER,
            Respondent

---

**BRIEF IN SUPPORT OF HABEAS CORPUS PETITION**

---

Submitted By:
Michael Sherred, Pro-Se
FW9835
SCI Camp Hill
P.O. Box 200
Camp Hill, PA  17001-0200

2007 DEC 21 AM 11:56
CLERK
U S DISTRICT COURT

## TABLE OF CONTENTS

JURISDICTION.......................................... 1

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED...... 2

PROCEDURAL HISTORY.................................... 3

ARGUMENT AND BASIS TO GRANT HABEAS CORPUS............. 4

CONCLUSION........................................... 17

## INDEX TO APPENDICES/OPINIONS

Appendix A.....Opinion of the Court of Common Pleas of
               Erie County

Appendix B.....Opinion of the Superior Court of Pennsylvania

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE NO.**

**Agan v. Singletary**
12 F.3d 1012 (11th Cir. (Fla.) 1994).......                        8

**Allen v. Woodford,**
395 F.3d 979 (9th Cir. 2005)..............                         6

**Apprendi v. New Jersey,**
530 U.S. 466 (2000)......................                    10, 11, 15

**Arizona v. Fulminante,**
499 U.S. 279 (1991)......................                         14

**Commonwealth v. Caraballo,**
848 A.2d 1018 (Pa.Super. 2004)............                       11

**Edwards v. Balisok,**
520 U.S. 641 (1997)......................                         13

**Engle v. Isaac,**
456 U.S. 107 (1982)......................                         14

**Harrison v. McBride,**
428 F.3d 652 (7th Cir. 2005)..............                       12

**Lambright v. Schriro,**
490 F.3d 1103 (9th Cir. 2007).............                         6

**Moore v. Bryant,**
348 F.3d 238 (7th Cir. (Ill.) 2003)........                        7

**Neder v. U.S.,**
527 U.S. 1 (1999)........................                         13

**O'Neal v. McAnnich,**
513 U.S. 432 (1995)......................                         13

**Riggs v. Fairman,**
399 F.3d 1179 (9th Cir. (Cal.) 2005).......                        5

**Ring v. Arizona,**
536 U.S. 584 (2002)......................                      15, 16

**Rompilla v. Beard,**
545 U.S. 374 (2005)......................                        6, 8

| CASES | PAGE NO. |
|---|---|
| Strickland v. Washington, 466 U.S. 668 (1984)..................... | 5, 6, 7, 9 |
| Tuney v. State of Ohio, 273 U.S. 510 (1927)..................... | 13 |
| U.S. v. Booker, 543 U.S. 220 (2005)..................... | 12 |
| Von Moltke v. Gilles, 332 U.S. 708 (1948)..................... | 8, 9 |
| Williams v. Taylor, 529 U.S. 362 (2000)..................... | 7 |

| STATUTES | |
|---|---|
| 28 U.S.C. § 2254(c)..................... | 4 |
| Fifth Amendment United States Constitution | 4 |
| Sixth Amendment United States Constitution | 4 |
| Eighth Amendment United States Constitution | 4 |
| Fourteenth Amendment United States Constitution | 4 |

| MISCELLANEOUS | |
|---|---|
| Alexandra Natapoff, "Speechless : The Silencing of Criminal Defendants", 80 N.Y.U. L. Rev. (2005) | 8 |

## QUESTIONS PRESENTED

1)   Whether Plea Counsel's failure to raise objections at sentencing and to file post-sentencing motions created a situation of Ineffective Assistance of Counsel?

2)   Whether Plea Counsel's failure to properly pursue mitigating evidence caused a significant prejudice to create further Ineffective Assistance of Counsel and in doing such, did both the Sentencing aspect and the failure to pursue mitigating create a violation of the Petitioner's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution?

3)   Whether the Sentencing Court created a manifestly unjust sentence based upon its use of extraneous information and the bias of the Court?

## JURISDICTION

The jurisdiction is invoked under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) as contained in 28 U.S.C. § 2244(d).

## Timeliness

This Petition is filed as the result of being denied in the Pennsylvania Superior Court on August 24, 2007.  This timely Petition was placed in the Petitioner's Prison Mailbox on December 10, 2007.

- 1 -

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

This involves the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. The Due Process, Effective Assistance of Counsel and the Equal Protection Clauses respectively.

## PROCEDURAL HISTORY

1)   The Petitioner was arrested on October 6, 2003, for various sex offenses.  He was released on $10,000.00 bail on October 9, 2003.

2)   The Court appointed Kevin Kallenbach to represent the Petitioner of October 14, 2003.

3)   A guilty plea was entered on May 12, 2004, for one count of Incest, one count of Involuntary Deviate Sexual Intercourse, one count Indecent Assault, one count of Endangering the Welfare of Children and one count of Corruption of the Morals of a Minor.

4)   The Petitioner was sentenced on June 25, 2004, to 8 1/2 years to 35 years.  All sentences running consecutive.

5)   On June 3, 2005, a timely PCRA was filed pro-se.  The direct appeal rights of the Petitioner were reinstated on June 9, 2005.

6)   A timely appeal was filed on July 7, 2005 and sentenced was affirmed on February 1, 2006.

7)   A timely pro-se PCRA was filed on March 27, 2006.  The Court issued a Notice of Intent to Dismiss the PCRA Petition on August 22, 2006.  The Court dismissed the PCRA on September 11, 2006.

8)   A timely appeal was filed with the Superior Court of Pennsylvania, 1847 WDA 2006.  This appeal was denied on August 24, 2007.  This instant Petition arises from that decision.

## BASIS TO GRANT HABEAS CORPUS

This Petition for a Writ of Habeas Corpus centers around two areas, Ineffective Assistance of Counsel and the legality of the sentence.

The Petitioner wishes to address the exhaustion of state remedies. The Petitioner has exhausted all of his state remedies under Pennsylvania law. The Supreme Court of Pennsylvania on May 9, 2000, under No. 218 Judicial Administration Docket No. 1, ordered that once a Petitioner has exhausted his appeal through the Superior Court of Pennsylvania he has exhausted all of his state remedies. The appeal to the Superior Court is a matter of right where a Petition for Allowance of Appeal, to the Supreme Court of Pennsylvania, is a matter of judicial discretion. This is further supported by 28 U.S.C. §2254(c), "he has the right under the law of the state to raise by an available procedure, the question presented." Here, the Petitioner's only right is to the Superior Court of Pennsylvania. Thus, the Petitioner has exhausted all of his state remedies.

The claim of Ineffective Assistance of Counsel is a direct violation of the Petitioner's Sixth Amendment right to the effective assistance of counsel under the United States Constitution, which is further secured to the Petitioner through the Fourteenth Amendment of the United States Constitution. Also, this claim violates the Petitioner's Due Process rights under the Fifth and Fourteenth Amendments of the United States Constitution.

- 4 -

The second area is the excessiveness and harshness of the sentence which in turn creates a violation of the Petitioner's Eighth Amendment rights under the United States Constitution.

(1)   The Ineffective Assistance of Counsel issue covers two distinct areas.   The first is the failure of counsel to raise objections at sentencing and the failure to file post-sentence motions.   The second is the failure to pursue mitigating evidence.

(2)   The failure of Plea Counsel to object to the sentences given to the Petitioner created a prejudice towards the Petitioner.   The sentences were at the aggravated end of the standard range.   The sentences were not individualized.   There was nothing in this case to create an atypical scenario as set it apart from other similarly situated cases.   Under Riggs v. Fairman, 399 F.3d 1179 (9th Cir. (Cal.) 2005), reference is made to the ineffectiveness of counsel if he is not aware of the potential sentences that his client could face and advise him accordingly.   The contention here is that Counsel had no idea what the possible sentence could be and hence remained silent.

(3)   The post-sentence motion would normally have been handled by an attorney who is diligent in his job and has the interest of his client at heart.   The assertion is made that since no post-sentence motions were filed, they were waived due to counsel's ineffectiveness.   The argument put forth is that the Petitioner became unduly prejudiced by the inactions of Counsel.   Citing Strickland v. Washington, 466 U.S. 668, 688

(1984), "Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty...".

(4)  The second part of the Ineffective Assistance of Counsel claim is the lack of Plea Counsel's efforts to adequately investigate mitigating evidence.  Under Rompilla v. Beard, 545 U.S. 374, 384 (2005), "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to the facts relevant to the merits of the case and the penalty in the event of conviction."  It is understood that in a guilty plea the investigation is a bit more relaxed than for a trial.  However, Plea Counsel still has the responsibility to conduct an investigation so he can properly advise his client.  Referring to Allen v. Woodford, 395 F.3d 979, 1000 (9th Cir. 2005), ""[t]o perform effectively...counsel must conduct sufficient preparation to be able to "present[] and[] explain the significance of all the available [mitigating] evidence.""  Citing Lambright v. Schriro, 490 F.3d 1103, 1116 (9th Cir. 2007), "...is unreasonable unless counsel has explored the issue sufficiently to discover the facts that might be relevant to his making an informed decision."

The assertion being made is that Plea Counsel made NO effort to investigate any mitigating evidence.  Evidence was provided to Plea Counsel regarding the question of whether the victim was the biological daughter of the Petitioner, paperwork challenging the time frames of the crimes and witnesses to support these challenges were brought forth by the Petitioner.

The Petitioner's family offered to pay for DNA testing to validate the assertion that the victim was not the biological child. Under Moore v. Bryant, 348 F.3d 238, 241 (7th Cir. (Ill.) 2003), "A reasonably competent counsel will attempt to learn all of the facts of the case,...". Counsel made absolutely no effort to properly investigate and assist his client in a professional manner.

When this information was brought to Counsel's attention the Petitioner was told by Counsel, time and again, "that this was not the time" or "we'll get to that". Counsel assured the Petitioner it would be addressed. It never was. Based on this Plea Counsel failed to conduct a reasonable and adequate investigation before advising and permitting the Petitioner to plead guilty. This should meet the "fell below an objective standard of reasonableness" standard as defined in Williams v. Taylor, 529 U.S. 362, 390-391 (2000) and Strickland v. Washington, supra, 46 U.S. 668, 688 (1984). This contention of "falling below an objective standard of reasonableness" is further supported by Plea Counsel's comment at sentencing, see Notes of Testimony, June 25, 2004, Page 8, lines 9-11, where Plea Counsel remarks about the Petitioner having no record for prior record score purposes. The Court refers to a prior record from 1988 in Georgia in the Notes of Testimony, June 25, 2004, page 11, line 19.

(5) It is understood that Counsel has a "lesser duty to a client who pleads guilty than to one who decides to go to

trial", referencing <u>Agan v. Singletary</u>, 12 F.3d 1012, 1018 (11th Cir. (Fla.) 1994). However, Plea Counsel must make "an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client.", citing <u>Von Moltke v. Gilles</u>, 332 U.S. 708, 721 (1948).

Counsel has a responsibility to protect his client's interests. <u>Rompilla v. Beard</u>, supra, 545 U.S. 374, 387 (2005), references ABA Standards for Criminal Justice 4-4-1 (2d ed. 1982 Supp.) which states "The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt of the accused's stated desire to plead guilty." This further supports the Petitioner's assertion that Plea Counsel failed to properly investigate the Petitioner's total circumstances.

Plea Counsel told the Petitioner to just answer 'yes' or 'no' at the Plea Colloquy. Counsel specifically told the Petitioner not to address any of these mitigating issues as Counsel would deal with them at sentencing. None of the mitigating factors were addressed at sentencing as the Petitioner had been assured by Plea Counsel it would be. "Defendant silence also has systemic implications for the integrity of the justice process."[1] The Petitioner relied upon his Plea Counsel to competently represent him and to safeguard his rights and

---

[1]   Alexandra Natapoff, "Speechless : The Silencing of Criminal Defendants", 80 N.Y.U. L. Rev. 1451, (2005).

interests.   "Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer.", referring to Von Moltke v. Gilles, supra, 332 U.S. 708, 725-726 (1948).  When the Petitioner was told the issues would be addressed he believed that his Counsel would deal with the situation in a proper and professional manner.  This conduct implicates a system in which either a public defender or court-appointed lawyer is too overburdened and the client suffers the adverse consequences from the attorney's professional inadequacies.  Citing Von Moltke v. Gilles, supra, 332 U.S. 708, 726 (1948), "...nowhere is this service more honorable than in case of appointment to represent an accused too poor to hire a lawyer, even though the accused may be a member of an unpopular or hated group, or may be charged with an offense which is peculiarly abhorrent."

(6)  The Petitioner further contends that the PCRA Court erred in not conducting a hearing to investigate the validity of these claims for ineffective assistance of counsel prior to dismissing the Petition.  Under Strickland v. Washington, supra, 466 U.S. 668, 691 (1984), "...inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions,...".  The assertion is that the Petitioner was unduly prejudiced due to the lack of informed advice by his Plea Counsel.

Although the Petitioner pled guilty, he was following the guidance and instruction of a misinformed, ineffective counsel and thus was unduly prejudiced by the failings of his attorney.

(7)   There are several aspects to the sentencing issue, the use of a prior criminal experience which did not impact the prior record score, the use of civil contempt citations for failure to pay child support and the bias of the Sentencing Court, towards the Petitioner, which led to the excessively harsh sentence.

(8)   The Sentencing Court used a prior criminal record which did not impact the Prior Record Score.  If there is no Prior Record Score impact from this previous experience, it should have no affect on the sentence.  The contention here is that an unreasonable bias permitted this sixteen year old issue to impact the sentencing scheme.

The Petitioner was charged in Georgia, during 1988, with Receiving Stolen Property and sentenced to six months probation.  Sixteen years later he is charged in the instant offenses.  The Pre-Sentence Investigation Report did not include this criminal experience from Georgia as it did not warrant inclusion for a Prior Record Score.  The Sentencing court can look at the character of the Petitioner.  However, positive imprints should be used as well as the negative imprints.

(9)   The Sentencing Court then uses Contempt Citations for failure to pay child support.  These civil issues should have no bearing on this situation as they are not relevant to the case at hand.  The Court aggravates the sentence for these citations when they were for a child in Missouri and were subsequently dismissed in July of 2004.

Granted the Sentencing Court is permitted a broad range of discretion, however, the Court is also bound by the <u>Apprendi</u>

decision. Referencing <u>Apprendi v. New Jersey</u>, 530 U.S. 466 at Footnote 10, (2000), "The judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury." The charges filed against the Petitioner did not include failure to pay child support. Furthermore, this is a civil action, not a criminal one. Referencing to the Notes of Testimony, June 25, 2004, page 11, line 24, the Court states, "...but you've neglected to support a child." This comment has no relevance to the instant case. It does not make this case dissimilar to other similarly situated cases. Hence, this is another demostrating event of the Sentencing Court's bias.

(10) The sentencing procedure is permeated with a prejudice towards the Petitioner. Not only is there the reference to the "neglect" with the Contempt Citations, but there are other jaundiced references throughout the sentencing record.

The Petitioner was not designated a Sexually Violent Predator. Yet, the Sentencing Court refers to him as such. This reference is in the Notes of Testimony, June 25, 2004, page 12, lines 18-22, the Sentencing Court states that the Petitioner is "a danger to other children". This is another presumption which the Sentencing Court makes. Animus is demonstrated towards the Petitioner in a continuous fashion by the Sentencing Court. This bias towards sex offenders is further demonstrated in <u>Commonwealth v. Caraballo</u>, 848 A.2d 1018, (Pa.Super. 2004), where this same Sentencing Court issued an excessive sentence not once but twice to the same defendant and the Appellate Courts reversed both for the same reason.

Another point where bias is demonstrated is when the Court alludes to a "lengthy criminal history". There is no "lengthy" criminal history. Under <u>Harrison v. McBride</u>, 428 F.3d 652, 664 (7th Cir. 2005), "Surely prejudice or interest of a judge may become apparent prior to trial and require the removal of that judicial officer in order to satisfy the requirements of due process." Surely this same application would implicate guilty pleas as well. Plea Counsel, in the Notes of Testimony, page 8, lines 11-12, comments to a "one contact incident". The claim here is that the reference to a "lengthy criminal record" is related to the charges that were Nolle Pros'd from the guilty plea. These charges were dropped and not admitted to by the Petitioner. Under <u>U.S. v. Booker</u>, 543 U.S. 220, 245 (2005), "Where the Sixth Amendment is violated by the imposition of an enhanced sentence...based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant." Based on this comment charges which are not pled to cannot be used in the fashioning of a sentence. Only one incident was charged and that was January 1, 1996.

(11)   Clearly, the Sentencing Court used these Nolle Pros'd charges to enhance the sentence of the Petitioner. When the Court used these extraneous factors of the dropped charges and the civil contempt citations, the Sentencing Court drastically overstepped its parameters. To use such factors would lead one to the conclusion that the Court permitted its bias to interfere with its decision making capability and thus created an illegal sentence.

Once the question of judicial bias is posed, one needs to look at whether this bias denies the Petitioner due process of law.  Referring to <u>Tuney v. State of Ohio</u>, 273 U.S. 510, 532 (1927), "Every procedure which would offer a possible temptation to the average man as a judge...not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law."  It should make no difference whether guilty plea or trial, each person should be afforded impartial due process of the law.  Citing <u>Neder v. U.S.</u>, 527 U.S. 1, 7 (1999), "Errors of this type are so intrinsically harmful as to require automatic reversal (i.e., "affect substantial rights") without regard to their effect on the outcome."  The assertion of judicial prejudice seems to summed very well by referencing <u>Edwards v. Balisok</u>, 520 U.S. 641, 647 (1997), "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him."

(12)  Harmless Error Analysis should not be applied to the Ineffective Assistance of Counsel and judicial bias issue.  The Harmless Error reviews whether the error(s) being challenged has created an error so drastic that a structural error was caused that impacted the trial mechanism or was it an error which was inconsequential and thus harmless.  The state bears the burden of proving the errors harmless under <u>O'Neal v. McAnnich</u>, 513 U.S. 432 (1995).

Ineffective Assistance of Counsel and a biased Court cannot be deemed harmless even for a guilty plea as they are both essential to the Petitioner in the fairness of the proceeding. The fact that the Petitioner accepted a guilty plea may have an impact. However, impartial due process and the aid of a competent attorney are essential to the fairness of any criminal proceedings. Referring to Arizona v. Fulminante, 499 U.S. 279, 309 (1991), "...was a judge who was not impartial. These are structural defects in the constitution of the trial mechanism,...". Granted this indicates a trial, however, the same principles should be applied to the sentencing from a guilty plea as well.

(13) It is understood that the collateral review, at the Federal level, attempts to promote finality for the state's decision. Finality is achieved at what price; an individual who has been blatantly deprived to the cherished right to the effective assistance of counsel and an impartial Sentencing Court? However, when the state fails to acknowledge a violation of federal constitutional rights or an issue which is contrary to established black letter federal law the Federal Courts are well within their jurisdiction to make a decision. Under Engle v. Isaac, 456 U.S. 107, 126 (1982), the writ of habeas corpus is referred to as "a bulwark against convictions that violate 'fundamental fairness'". Based on this comment, the lack of professionalism demonstrated by Plea Counsel to properly investigate the complete facts of the Petitioner's situation and the prejudice of the Sentencing Court in creating a harsh and excessive sentence, challenges the 'fundamental fairness''

- 14 -

of the due process afforded to the Petitioner. This lack of 'fundamental fairness' led to the final issue, which is the harshness of the sentence.

(14) The harshness and excessiveness of the sentence was a product of the extraneous information and bias of the Sentencing Court.

(15) Clearly, the Sentencing Court used these Nolle Pros'd charges to enhance the sentence of the Petitioner. This is a clear violation of established federal law. Then, to combine this factor with the civil contempt citations, the Court severely surpassed its boundaries. To use these extraneous items would lead to the conclusion that the Petitioner's right to a jury trial was violated. Citing <u>Ring v. Arizona</u>, 536 U.S. 584, 610 (2002), "...the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives--whether the statute calls them elements of the offense, sentencing factors, or Mary Jane--must be found by the jury beyond a reasonable doubt."

Outside of the extraneous material used for the fashioning of the sentence, there is nothing about this crime which makes it atypical to other similarly situated cases. Hence, there is no reason for the severity of the sentence outside of the bias of the Sentencing Court in the use of extraneous information.

(16) At the time of the Petitioner's sentencing <u>Apprendi v. New Jersey</u>, supra, 530 U.S. 486 (2000) and <u>Ring v. Arizona</u>,

supra, 536 U.S. 584 (2002) had been decided by the Supreme Court
of the United States.   The Petitioner contends that the Court
failed to apply the decisions of the above cases properly to
his situation, thus the Petitioner received an excessively harsh
sentence with the use of improper sentencing factors.

This improper sentence was created by the Court using
the extraneous information of the contempt citations, which were
subsequently dropped the month following sentencing, the Nolle
Pros'd charges and the Georgia charge, which was sixteen years
old, and was not used in the Pre-Sentence Investigation and
generated a Zero Prior Record Score.   Furthermore, this excessive
sentence was created by the Court's animus towards sex offenders
in general.   The coupling of all of these factors had an injurious
and prejudicial impact to the Petitioner when in fact there is
nothing atypical about his crime as compared to other similarly
situated cases.

## CONCLUSION

Ineffective Assistance of Counsel caused the Petitioner to become prejudiced on two fronts. The first was Plea Counsel's failure to object to the sentence or to file post-sentence motions. The second aspect was Counsel's failure to explore mitigating evidence.

The failure of Counsel to either object to the sentence or to file post-sentence motions caused the Petitioner to become prejudiced. Counsel could not have been aware of the potential sentences which awaited the Petitioner. The sentences were not individualized. There was nothing atypical of this crime to set it apart from other similarly situated cases. Therefore, without Plea Counsel being aware of the potential sentences he could not properly advise his client on accepting the guilty plea.

Furthermore, with Plea Counsel being ignorant to the mitigating facts of the Petitioner's situation, Counsel was further incapable of making an intelligent decision so he could guide his client accordingly. He promised the Petitioner the mitigating issues would be addressed. They never were addressed. Thus, the Petitioner was further handicapped by the lack of professional guidance to which he is Constitutionally guaranteed.

A harsh and excessive sentence was created through the bias of the Sentencing Court as it used information which was not relevant to the case at hand. The combination of the Civil

Contempt Citations, a sixteen year-old case, which the Petitioner served six months probation and the making of bias comments culminated in the creation of a severe sentence.

The combination of all of these factors, which violated the Constitutional Rights of the Petitioner, caused a drastic bias towards the Petitioner which puts to question the "fundamental fairness" of his Due Process.

Based on the above, the Petitioner humbly requests that his Writ of Habeas Corpus be granted and that his sentence be vacated and that his guilty plea be withdrawn and that this be remanded back to the lower courts for the proper due process.

Respectfully Submitted,

*Michael a Sherred*

Michael Sherred, Pro-Se
FW9835
SCI Camp Hill
P.O. Box 200
Camp Hill, PA  17001-0200